UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

February 20, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Chad H. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 25-0380-DRM

Dear Counsel:

On February 7, 2025, Plaintiff Chad H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 10, 12, 13. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for Supplemental Society Income Benefits ("SSI") on March 27, 2017, alleging a disability onset of March 27, 2017. Tr. 151. Plaintiff's claims were denied initially and on reconsideration. Tr. 109. On October 17, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 55-105. Following the hearing, on September 3, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 106-130. On February 24, 2021, the Appeals Council denied Plaintiff's request for review and Plaintiff appealed to this Court. Tr. 4. This Court remanded Plaintiff's case to the Commissioner for further consideration on April 6, 2023. Tr. 151-155. On August 9, 2024, a second ALJ held another hearing. Tr. 31-54.  On November 13, 2024, that ALJ concluded that Plaintiff was not disabled. Tr. 1-28. The second

---

[1] Plaintiff filed this case against Michelle King, the Acting Commissioner of Social Security on February 5, 2025. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); see also 20 C.F.R. § 422.210(a), which will be discussed herein.

## II.　　THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 27, 2017, the application date, through April 19, 2022. Tr. 7. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "mild degenerative lumbar spondylosis; mild cervical spondylosis; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; attention deficit hyperactivity disorder." Tr. 7. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 7. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a range of light work as defined in 20 CFR 416.967(b). The claimant is able to lift and/or carry up to twenty pounds on an occasional basis and up to ten pounds on a frequent basis; stand and/or walk up to six hours (with normal breaks) during an eight-hour workday and sit (with normal breaks) for up to six hours during an eight-hour workday. He could occasionally climb ladders, ropes, scaffolds and/or balance and perform all other postural activities up to two-thirds of an eight-hour workday. He could perform simple job instructions in work which did not have specific production rates and required interactions with supervisors, coworkers, or the public no more than one-third of an eight-hour workday.

Tr. 9. The ALJ determined that Plaintiff is unable to perform any past relevant work but could perform jobs that existed in significant numbers in the national economy, such as touch-up screener, bench hand/jewelry repair, and polisher. Tr. 15-16. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 16.

*Chad H. v. Bisignano*
Civil No. 25-0380-DRM
February 20, 2026
Page 3

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC limitation to work that does not entail "specific production rates" was vague and rendered the hypothetical to the vocational expert ("VE") inadequate, thereby infecting the RFC and step-five findings and requiring remand under Fourth Circuit precedent. ECF No. 10 at 8-10. Plaintiff contends that neither the Social Security regulations nor the DOT define "specific production rates," making it impossible to assess whether the VE's testimony reliably established jobs he could perform.

The Commissioner responds that substantial evidence supports the mental RFC and that the limitation to work without "specific production rates," when read alongside the ALJ's additional restrictions to simple instructions and limited social interaction, permits meaningful judicial review. ECF No. 12 at 6-8. The Commissioner further argues that Plaintiff forfeited this challenge by failing to seek clarification or object to the VE's testimony at the hearing and, in any event, that the phrase is sufficiently understood in context and supported by DOT usage. In reply, Plaintiff maintains that the Commissioner fails to cure the defect because the ALJ never explained the "specific production rate" limitation to the VE, leaving uncertainty that precludes meaningful review. ECF No. 13 at 1-2. He reiterates that this failure tainted the RFC and step-five determinations and warrants remand.

The Court concludes that the ALJ's decision is not supported by substantial evidence. Courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations" when reviewing for substantial evidence. *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075 2021 WL 4034264, at *2 (D. Md. Sept. 3, 2021) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted)). Agency conclusions must be stated in terms the Court can understand for the Court to conduct a substantial evidence review.

*Chad H. v. Bisignano*
Civil No. 25-0380-DRM
February 20, 2026
Page 4

In *Thomas v. Berryhill,* 916 F.3d 307, 310 (4th Cir. 2019), the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine whether the RFC finding was supported by substantial evidence. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Thomas,* 916 F.3d at 312 n.5. The panel emphasized that, on remand, the ALJ must clarify how long and under what conditions the claimant could sustain focus and remain on task. *Id.* And although *Thomas* identified other grounds for remand, later Fourth Circuit decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. In *Trena Sue*, the court likened the use of the phrase "fast paced produced" to the terms in *Thomas*, both in "form and defect." *Trena Sue Y.,* 2021 WL 4034264 at *4.

Similarly, in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas" was not an adequate description of the limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his RFC determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended ... and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion") (internal quotation marks omitted)).

The term used here, "specific production rates" is analogous to the terms used in *Thomas* and *Linger*, in that it is not defined by regulation and is susceptible to varying interpretations.

Relying on *Jessie F. v. Bisignano*, the Commissioner contends that the phrase "specific production rates" describes work involving constant production-driven activity and, when read in context with the ALJ's additional mental limitations, permits meaningful judicial review without further explanation. *See Jessie F. v. Bisignano*, No. 1:24CV995, 2025 WL 1950265, at *5 (M.D.N.C. May 28, 2025), report and recommendation adopted sub nom. *Fulks v. Bisignano*, No. 1:24-CV-995, 2025 WL 1939902 (M.D.N.C. July 15, 2025). In *Jessie F.*, the court rejected a challenge to an RFC limitation involving "production rate pace," reasoning that the phrase is a term of art grounded in the Dictionary of Occupational Titles (DOT). Relying on the definition of "light work" in Appendix C to the DOT, the court found that "'production rate pace' is a term of art describing constant movement or engagement," and that "the DOT provides the clarity for 'production rate pace' that was missing from the language at issue in *Thomas*." *Jessie F.*, 2025 WL 1950265 at *6. "Even setting that aside," the court found that ALJ's RFC in *Jessie F*. imposed additional mental limitations making the restriction sufficiently concrete to permit meaningful judicial review.

As an initial matter, the Court is not persuaded that the phrase at issue in *Jessie F.*, "production rate pace," is in fact a term of art with unambiguous meaning solely because it appears in the definition of "Light Work" in DOT Appendix C. Appendix C states, in relevant part:

> L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. *Even though the weight lifted may be only a negligible amount, a job should be rated Light Work*: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) *when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.*

U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991) (emphasis added).

The Court does not read this passage to mean that "production rate pace" means exactly and exclusively "the constant pushing and/or pulling of materials." Rather, it seems to mean that where a job that would otherwise be classified as sedentary requires working at a "production rate pace"—whatever that means—*and* working at that rate *in that job* results in the constant pushing and pulling of materials, the job should be classified as "Light Work." The Court notes that the term "production rate pace" is defined nowhere in this definition or anywhere else in the DOT and its appendices.

Even if the specific term in *Jessie F.*, "production rate pace," were rendered unambiguous by its inclusion in DOT Appendix C, that is not the term at issue in the present case: "specific production rates." Indeed, the ambiguity in the present case is compounded by the ALJ's use of the qualifier "specific," which offers no discernible benchmark. It merely raises the question: specific to what metric, standard, or expectation? Without any explanation for "specific," the Court cannot determine the scope of the restriction the ALJ intended to impose, which prevents meaningful review.

*Jessie F.* also correctly notes a line of cases approving RFCs containing "production rate pace" and similar phrases where the ALJ provides additional descriptors or limitations which clarify its meaning. *Jessie F.*, 2025 WL 1950265 at *6. However, this Court agrees with cases holding that only descriptors or limitations addressing concentration, persistence, and pace are sufficient to clarify the meaning of "production rate pace" and similar terms. *See Hall v. Bisignano,* No. 5:25-CV-00009-D, 2025 WL 3457913, at *7 (E.D.N.C. Sept. 25, 2025), report and recommendation adopted, No. 5:25-CV-9-D, 2025 WL 3453314 (E.D.N.C. Dec. 1, 2025)

("restrictions on workplace hazards, interactions, and workplace changes . . . appear to address not concentration, persistence, and pace but environmental conditions (occasional exposure to workplace hazards) or other mental domains like interacting with others (occasional or frequent contact with other people) and adapting or managing oneself (occasional changes in work setting). So the other limitations do not give context to the 'production-rate pace' restriction.")

Here, the additional descriptors and limitations in Plaintiff's RFC go to the simplicity of job instructions and frequency of interactions with supervisors, coworkers, and the public, but do not address concentration, persistence, and pace, nor do they otherwise define "specific production rates." The Court therefore finds them insufficient to clarify the meaning of that term.

Additionally, the Commissioner argues that Plaintiff waived any challenge to the VE hypothetical by failing to seek clarification of the "specific production rates" limitation at the administrative hearing. This argument is unpersuasive.[3] As Judge Gallagher explained in *Trena Sue*, "the alleged ambiguity arose in the RFC assessment or the hypothetical is a distinction without a difference because the ALJ used the same term in the hypothetical and in the RFC discussion." *Trena Sue Y.*, 2021 WL 4034264, at *3 (citing *Ursula G. v. Berryhill*, No. SAG-18-1841, 2019 WL 2233978, at *2 (D. Md. May 23, 2019)). Similarly, in *Brenda C.*, the court concluded that even if the VE were believed to have understood the limitation, "under current Fourth Circuit law, more specific definition is required to allow this Court to determine whether the ALJ has built a logical bridge between the evidence and his conclusion." *Brenda C. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3234, 2019 WL 4017024, at *2 (D. Md. Aug. 26, 2019). Regardless of whether Plaintiff's counsel failed to appropriately question the VE, the ALJ is required to follow regulations and build a logical bridge between the evidence and their conclusions, which the ALJ failed to do by using undefined, ambiguous phrases such as "specific production rates."

Therefore, like in *Thomas*, *Linger*, and *Trena Sue*, because the ALJ's utilization of "specific production rates" does not provide "enough information to understand what th[ ]e term[ ] mean[s]," it is difficult for the Court to ascertain whether the ALJ's decision was supported by substantial evidence. *See Thomas*, 916 F.3d at 311-12. Remand is therefore appropriate.

V.    **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REMANDED.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

---

[3] The Commissioner relies exclusively on decisions from the Middle District of North Carolina, which he cites without further explanation as to how their reasoning applies to the circumstances of this case. Those cases are not binding on this Court, and the Court has been unable to identify any controlling authority adopting such a forfeiture rule. Because the Commissioner's argument is not binding on this Court, the Court considers it only to the extent it is persuasive.

*Chad H. v. Bisignano*
Civil No. 25-0380-DRM
February 20, 2026
Page 7

                                                Sincerely,

                                                       /s/

                                              Douglas R. Miller
                                              United States Magistrate Judge

Case 1:25-cv-00380-DRM   Document 15   Filed 02/20/26   Page 7 of 7